UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:15-cr-00200-KJD-PAL |
| Plaintiff, | **REPORT OF FINDINGS AND RECOMMENDATION** |
| v. | |
| RAY ANDERSON, | (Mot Suppress - Dkt. #25/26) |
| Defendant. | |

Before the court is Defendant's Ray Anderson's ("Anderson") Motion to Suppress Evidence Due to Fourth and Fifth Amendment Violations (Dkt. #25/26) which was referred to me for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4. The court has considered the Motion (Dkt. #25/26), the government's Response (Dkt. #32), Anderson's Reply (Dkt. #42), and the arguments of counsel at a hearing held on March 21, 2016. Phillip Smith appeared on behalf of the government, and Rachel Korenblat appeared on behalf of Anderson. After the hearing, Anderson filed a Supplement (Dkt. #44) on April 5, 2016, bringing the court's attention to a Maryland Appellate Court decision issued March 30, 2016.

## BACKGROUND

Anderson is charged in an Indictment (Dkt. #1) returned July 8, 2015, with felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a) and 924(a)(2). The indictment arises out of an arrest by officers of the Las Vegas Metropolitan Police Department ("LVMPD") Criminal Apprehension Team ("CAT"). During a search incident to arrest, LVMPD Detective Kegley located a Ruger .44 magnum revolver in Anderson's waistband. Anderson was transported to the police station where LVMPD Detective McCarthy read

Anderson *Miranda* rights.  During subsequent questioning, Anderson admitted that he possessed the firearm.

## I.    The Motion to Suppress.

In the current motion, Anderson seeks to suppress physical and testimonial evidence seized by LVMPD as a result of locating him using historical cell site location information.  On June 22, 2015, state court Judge Nancy Allf signed an order, a copy of which is attached as Exhibit D to the motion, authorizing a pen register/trap and trace and subscriber and cell site location information.  As a result of this order, law enforcement received information regarding Anderson's precise location from May 22, 2015, through June 22, 2015.

Anderson asks that the court suppress evidence derived as a result of the order because the order violated his Fourth Amendment rights in that it was premised on "specific and articulable facts" rather than probable cause as required by the Fourth Amendment.  Anderson also requests a *Franks* hearing asserting the application for the order contained false or misleading facts, and omitted material facts regarding law enforcement's ability to locate him without the information authorized by the order.

Anderson argues the order violated his Fourth Amendment rights because probable cause should be the standard for obtaining historical cell site records.  Anderson acknowledges that pursuant to 18 U.S.C. § 2703, historical cell site location information may be obtained by an order directed to cell phone providers to disclose stored records or other information pertaining to a subscriber based on specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or records of the information sought, are relevant and material to an ongoing criminal investigation.  However, citing two recent decisions in the Northern District of California, Anderson argues that to obtain historical cell site location information, the government should be required to show probable cause because historical cell site location information associated with cell phones is private information.

Anderson disputes that the third party doctrine applies to today's cell phone technology.  Acknowledging that cell phone records are the records of the cell phone provider, Anderson argues that a phone user's reasonable expectation of privacy in historical cell site location

2

1    information associated with cell phones is entitled to heightened protection under the Fourth

2    Amendment.   Therefore, the court should follow the decisions in the Northern District of

3    California and find that the third-party doctrine is inapplicable to Anderson's expectation of

4    privacy in his historical cell phone location information data.

5            Anderson also relies on the Fourth Circuit's decision in *United States v. Graham*, 796

6    F.3d 332 (4th Cir. 2015), which held that the government conducts a search under the Fourth

7    Amendment when it obtains and inspects a cell phone user's historical cell site location

8    information over an extended period of time.

9            Anderson contends that evidence derived from his unlawful seizure must be suppressed

10   under the fruit of the poisonous tree doctrine.  Specifically, LVMPD only located Anderson on

11   June 24, 2015, at the Pecos apartment because it obtained historical cell site location information

12   from Anderson's cell phone.   Therefore, statements taken after he was located and arrested

13   should be suppressed.  Assuming arguendo that 18 U.S.C. § 2703(d) only requires a showing of

14   specific and articulable facts, rather than probable cause, Anderson argues the order did not meet

15   the specific and articulable facts standard.

16           Anderson also maintains that the declaration supporting the application for the historical

17   cell site location information contains material omissions and/or misrepresentations in violation

18   of the principles articulated in *Franks v. Delaware*, 438 U.S. 154 (1978).  He requests an

19   evidentiary hearing asserting Detective Klegley intentionally or recklessly made materially false

20   misrepresentations and omissions: (1) regarding the correct standard for the court order—

21   specific and articulable facts showing reasonable grounds to believe the requested information is

22   relevant and material to an ongoing criminal investigation instead of probable cause; and (2)

23   regarding law enforcement's ability to locate Anderson without the order.  Detective Klegley

24   omitted telling Judge Allf that LVMPD was in contact with Anderson after at least one arrest

25   warrant was issued before the detective's declaration was submitted to Judge Allf.   An

26   evidentiary hearing will demonstrate that law enforcement was in contact with Mr. Anderson

27   after one of the warrants was issued, and therefore, police could have arrested him during that

28   contact, obviating the need for the order disclosing historical cell site location information.

Finally, the motion argues that LVMPD violated Anderson's Fifth Amendment rights by failing to provide adequate *Miranda* warnings. Detective McCarthy failed to inform Anderson that he had the right to consult with an attorney before questioning. At most, the *Miranda* rights Detective McCarthy provided informed Anderson that an attorney would be appointed before questioning if he could not afford one, which does not equate with informing a defendant that he had the right to consult with an attorney prior to questioning.

## II.    The Government's Response.

The government opposes the motion arguing that the order was properly obtained pursuant to 18 U.S.C. § 2703(d) which allows the government to obtain historical cell site location information if the government offers specific and articulable facts showing that there are reasonable grounds to believe the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. None of the cases cited by Anderson are binding or controlling precedent in this district. Two of the cases Anderson relies upon were decided after the detective obtained the order at issue in this case. The Fourth Circuit's decision in *United States v. Graham* was decided after the detective obtained the order at issue in this case, and is presently scheduled for hearing *en banc*. Numerous district court cases have held that cell site location data from historical phone records may be obtained by an order under 18 U.S.C. § 2703(d) on a showing of specific and articulable circumstances rather than probable cause. Additionally, the Fourth Circuit decision in *Graham* created a circuit split with *United States v. Davis*, 785 F.3d 498 (11th Cir. 2015), and *In Re: Application*, 724 F.3d 600 (5th Cir. 2013). The Eleventh and Fifth Circuits have held that obtaining a court order under 18 U.S.C. § 2703 for production of a cell phone carrier's business records containing historical cell site location information was not a search under the Fourth Amendment.

In this case, there were specific and articulable facts supporting the issuance of the order and the exclusionary rule is therefore inapplicable. Even if the court finds the order is invalid on its face, the good faith exception recognized by *United States v. Leon*, 486 U.S. 897 (1984) precludes the application of the exclusionary rule. The law of the land in this district, and in

state courts in Nevada at the time the order was issued, was that a person did not have a reasonable expectation of privacy in historical cell site location information.  Thus, even if the court concludes a higher probable cause standard should apply for an application requesting historical cell site location information, this motion to suppress should be denied as it would announce a new constitutional rule which should not be applied retroactively.

The purpose of the exclusionary rule is to deter further Fourth Amendment violations. This purpose would not be accomplished where, as here, there was and still is no binding judicial precedent requiring a probable cause standard to obtain historical cell site location information. The detective applying for the order relied in good faith on the plain language of 18 U.S.C. § 2703(d), and in the absence of any controlling authority to the contrary, none of the cases cited in the motion to suppress support a retroactive mandate to exclude evidence obtained pursuant to a § 2703(d) order.

The government argues in the alternative that even if this court determines that the good faith doctrine does not apply, the historical cell site location information obtained pursuant to the order is admissible under the "inevitable discovery" exception to the exclusionary rule because the affidavit supporting the application for the order stated probable cause and would have supported an order or warrant based on probable cause.

The government disputes that the declaration supporting the order contained any intentionally or recklessly false statements or misleading omissions and objects to a *Franks* hearing.  The detective applying for the order could not have known that the specific and articulable facts standard under § 2703(d) was not the appropriate standard based on an out-of-district case decided after the application was applied for.  The declaration did not represent that investigators had been attempting to locate Anderson to arrest him on outstanding warrants.  The declaration itself made no mention of the traffic warrant, but only referenced the felony assault charge indicating that a warrant for assault with a deadly weapon had been issued on June 22, 2015, out of North Las Vegas Justice Court.  Although Anderson claims he had some contact with law enforcement prior to the detective's June 22, 2015 declaration, he has provided no specifics meeting the substantial preliminary showing required by *Franks* to entitle him to an

5

evidentiary hearing.  Additionally, even if law enforcement had contact with Anderson after the misdemeanor traffic warrant was issued, this is not material to a request for an order to gather location information needed to arrest him on a felony assault with a deadly weapon warrant.

Finally, the government argues that the *Miranda* warnings that were administered to Anderson before he made incriminating statements were adequate.  The warnings as a whole told Anderson he had the right to have a lawyer appointed before questioning begins, and was read from a standard LVMPD *Miranda* warning admonition card.  It conformed with the Supreme Court's requirements that a suspect be told that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.  The United States acknowledges that two district judges in this district have found that LVMPD's standard *Miranda* advisement was deficient because it did not advise a suspect that he had the right to consult with or speak to an attorney prior to questioning.  However, the government maintains that both cases were incorrectly decided.  Another district judge has reached the opposite conclusion based on the same standard LVMPD *Miranda* advisement.  The United States therefore argues that LVMPD's standard advisement is adequate and meets constitutional standards.

### III.    Anderson's Reply.

Anderson replies that the court must hold an evidentiary hearing to resolve disputed material factual issues.  Specifically, the detective committed a *Franks* violation by making factual misrepresentations or omissions in his declaration for the order under 18 U.S.C. § 2703(d) by informing the court: (1) that historical cell site location information was needed to allow detectives to arrest Anderson on active warrants which may lead to further evidence and suspects; (2) to locate Anderson; and (3) because Detective Amundson intentionally or recklessly misrepresented the standard for obtaining the order by relying on the specific and articulable facts standard instead of probable cause.

In this case, the assault with a deadly weapon charge for which officers were allegedly seeking to arrest Anderson took place on May 15, 2015.  Detective Amundson requested

historical cell site location information from Anderson's cell phone from May 22, 2015, to June 22, 2015, after the purported assault.  Therefore, the historical cell site location information had no bearing whatsoever on proving whether Anderson was at the scene of the alleged crime.  Following his arrest on the assault with a deadly weapon charge, LVMPD detectives did not ask Amundson a single question about the assault when they interviewed him.  The court should therefore not place any stock in the government's representations concerning why historical cell site location information was material and relevant to the so-called assault investigation.  The detective clearly did not request the order to aid in the assault investigation.  Rather, Detective Amundson's true purpose behind arresting Anderson was for LVMPD to interrogate him about a murder.  LVMPD was actively involved in getting the North Las Vegas Police Department ("NLVPD") to issue a warrant after LVMPD Detective McCarthy became involved in the NLVPD case.  Only after LVMPD's involvement did NLVPD determine that there were sufficient facts to support a criminal complaint for assault with a deadly weapon--the asserted basis for obtaining the historical cell site location information from Judge Allf.

The reply reiterates arguments that the order violated Anderson's Fourth Amendment rights because it was issued on specific and articulable facts instead of probable cause.  Newer cell phone technology allows constant tracking through automatic pinging and continually running cell phone applications.  This technology implicates heightened expectations of privacy and should require probable cause review before law enforcement is entitled to obtain and seize historical cell site location information under § 2703(d).  In this case, law enforcement did not simply obtain a list of calls to and from Anderson's cell phone.  Rather, the order gave law enforcement the ability to track Anderson's precise movements for one month, including his movements at his father's home.

Anderson disputes that the good faith or inevitable discovery doctrines apply.  Acknowledging there is no binding Ninth Circuit precedent on whether probable cause is required for an order to obtain historic cell site location information, this court should still not apply the good faith exception because prior precedent is, at best, unclear.  This court should not find a *Leon* good-faith exception because the declaration supporting the order in this case

1   contains knowing or recklessly false statements and omissions, by: (1) falsely informing the

2   court that the proper standard was specific and articulable facts rather than probable cause; (2)

3   falsely representing that law enforcement could not locate Anderson without the order; (3)

4   falsely representing that law enforcement wished to arrest Anderson to investigate the assault

5   case; (4) omitting that LVMPD wanted to arrest Anderson to interview him for a murder

6   investigation; and (5) omitting LVMPD's involvement behind obtaining the NLVPD's assault

7   warrant.

8        Anderson also claims that Judge Allf acted as a mere "rubber stamp" in approving a

9   standard order created and provided by the Clark County District Attorney's Office.  Detective

10  Amundson did not provide Judge Allf with a sufficient basis for issuing the order because he

11  failed to disclose the totality of the circumstances. *i.e.*, that LVMPD was the impetus behind

12  NLVPD's issuance of the assault with a deadly weapon warrant which was obtained so that

13  police could located Anderson to interrogate him about an undisclosed murder investigation.

14       The inevitable discovery exception does not apply because the court should not condone

15  the government's failure to obtain a warrant or an order supported by probable cause based on

16  arguments the government would have inevitably obtained a probable cause warrant or order.

17       Finally, Anderson argues the court should suppress his custodial statements because the

18  *Miranda* warnings that were administered were legally inadequate as a matter of law.  The

19  warning did not advise Anderson that he had the right to consult with an attorney prior to

20  questioning.  The court should follow the rationale of two other district judges in this district

21  who have found that the standard LVMPD Advisement of *Miranda* rights is inadequate.

22       Anderson filed a Supplement (Dkt. #44) based on a decision entered in *State v. Andrews*,

23  __ A. 3d __ 2016 WL 1254567 at *1 (Ct. of Sp. App. MD March 30, 2016) after the hearing.

24  The case held that the state violated the defendant's Fourth Amendment rights by using a "cell

25  site simulator" to track the defendant's real time movements through his cell phone and arrest

26  him on a valid arrest warrant.

27  / / /

28  / / /

8

1

## DISCUSSION

2   The Fourth Amendment secures "the right of the people to be secure in their persons,

3   houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.

4   The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v.*

5   *United States*, 389 U.S. 347 (1967).  The Fourth Amendment protects "people, not places."  *Id*.

6   Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be

7   suppressed as the "fruit of the poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).

8   **I.** *Franks* **Hearing.**

9   A defendant is entitled to a hearing pursuant to the United States Supreme Court's

10   opinion in *Franks v. Delaware* where he makes a substantial preliminary showing that: (a) the

11   affidavit in support of a search warrant contains intentionally or recklessly false statements or

12   misleading omissions; and (b) the affidavit in support of a search warrant cannot support a

13   finding of probable cause without the allegedly false information.  *See Franks*, 438 U.S. 154, 170

14   (1978)); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).  To justify a hearing, a

15   defendant must make "specific allegations, allege a deliberate falsehood or reckless disregard for

16   the truth, and accompany such claim with a detailed offer of proof."  *United States v. Craighead*,

17   539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted).  Intentional or reckless omissions may

18   also provide grounds for a *Franks* hearing.  See *United States v. Jawara*, 474 F.3d 565, 582 (9th

19   Cir. 2007).  If a defendant makes the requisite preliminary showing, the court conducts a hearing

20   to determine the validity of the warrant.  Suppression results if, after excising the false or

21   misleading statements from the affidavit, there is not probable cause to support the warrant.  *See*

22   *Franks*, 438 U.S. at 171-72.

23   The court finds that Anderson has not met his threshold burden of showing a deliberate

24   falsehood or reckless disregard for the truth, or intentional or reckless omissions in the

25   application for the order to Judge Allf.  Detective Amundson did not falsely inform Judge Allf

26   that the proper standard for the issuance of an order for historical cell cite location information

27   was probable cause rather than specific and articulable facts.  18 U.S.C. § 2703(d) specifically

28   mandates the reasonable and articulable facts standard.  Although the law is developing on

whether the court should authorize historical cell site information under § 2703(d)'s specific and articulable facts standard, or whether a heightened Fourth Amendment probable cause standard is required, Detective Amundson did not misrepresent the law to Judge Allf.  There is no Ninth Circuit decision holding that probable cause is required to obtain historical cell site location information, there is a circuit split of opinion in the three courts of appeals which have decided the issue.  Detective Amundson did not falsely represent the standard for obtaining an order under § 2703(d).

Anderson also claims that he is entitled to a *Franks* hearing because the application falsely represented that law enforcement could not locate him without the historical cell site information requested in the order.  His motion is not supported by an affidavit or offer of proof.  At most, he claims that law enforcement knew where he was on some undetermined date in June 2015, because he was shot, in the hospital, and interviewed by police.  The motion and reply do not state when Anderson had contact with law enforcement, or whether he provided specific information where he was living and where he could be located.  The arrest warrant for the assault with a deadly weapon charge was issued June 22, 2015—the same day Detective Amundson applied for the pen register, trap and trace, and order for historical cell site location information.  The affidavit supporting the criminal complaint for assault with a deadly weapon attests that on May 15, 2015, the witness/alleged victim indicated Anderson "used to live somewhere in the apartment complex" where the incident occurred, but that he "had no way to reach Anderson and did not know where he currently lived."  A copy of the complaint and affidavit of arrest of Detective Antoniewicz is attached as Exhibit J to Anderson's Reply.  The affidavit relates that officers conducted a records check on Anderson which listed an address at 1200 W. Cheyenne, #2095, two apartment buildings away from the witness/alleged victim.  *Id.* Two officers went to the apartment to try to make contact with Anderson; however, new tenants were living there and Anderson's whereabouts were unknown.

The fact that law enforcement may have known where Anderson was on an unspecified date in June before the assault with a deadly weapon warrant was issued and application for the order was made does not support Anderson's argument that law enforcement lied or omitted

material facts that they needed the historical cell site records sought and that the records were relevant and material to an ongoing investigation. The declaration supporting the application related that an arrest warrant for assault with a deadly weapon was issued out of North Las Vegas Justice Court on June 22, 2015, and since that time, investigators had been attempting to locate Anderson to arrest him on the charge and to gather additional evidence regarding the crime. Anderson has not supported his claim that the officers actually knew where he was by affidavit or offer of proof, and the court has no reasons to doubt Detective Amundson's representations.

Anderson's reply also claims that the declaration submitted to Judge Allf falsely represented that law enforcement wished to arrest Anderson to investigate the assault with a deadly weapon case, and omitted information that LVMPD wanted to arrest Anderson to interview him on a murder investigation. The reply argues that the declaration omitted material information about LVMPD's involvement in getting NLVPD to issue a complaint and warrant for assault with a deadly weapon. Anderson points to his interrogation following his June 22, 2015 arrest to support these claims. Specifically, he argues that after he was arrested on the outstanding assault with a deadly weapon warrant, officers did not question him about the assault with a deadly weapon. Rather, all of the questioning was done by LVMPD Homicide Detectives McCarthy and Merrick who asked Anderson questions about a homicide investigation. Thus, he contends, the declaration supporting the application for the order falsely claimed that historical cell site location information was needed to locate Anderson and to further the assault with a deadly weapon charge.

An investigation does not end when an arrest warrant is issued, or before the suspect has been arrested. Additionally, the witness/alleged victim of the assault with a deadly weapon reported that Anderson took out a Glock .45 and held it by his side during an altercation resulting in this charge. Knowing that Anderson carried a gun, officers could reasonably infer that he may be carrying the gun used in the assault with a deadly weapon incident when apprehended on the arrest warrant. Anderson has not met his burden of establishing Detective Amundson's

1    declaration falsely stated the cell site location information was needed to locate/arrest Anderson

2    on the warrant and to further the investigation.

3         The fact that two different police agencies cooperated in an investigation of Anderson on

4    two different crimes—an assault with a deadly weapon and murder investigation—was not a

5    material omission   Anderson's arguments that LVMPD was the impetus for getting NLVPD to

6    issue the complaint and warrant for assault with a deadly weapon are supported by exhibits

7    submitted with the motion and reply.  It appears that LVMPD homicide detectives located and

8    interviewed the witness/alleged victim of the assault with a deadly weapon, and provided this

9    information to NLVPD who then initiated the process to obtain a complaint and warrant.  The

10   witness/alleged victim was interviewed by NLVPD the night of the offense, but stated he did not

11   want to provide a voluntary statement.  It may very well be that LVMPD homicide detectives did

12   the additional work of finding and interviewing the witness/alleged victim to obtain an arrest

13   warrant to further their own homicide investigation.  However, information that LVMPD

14   regarded Anderson as a suspect in an unrelated homicide investigation would have bolstered,

15   rather than detracted, from the need to locate Anderson to investigate one or more crimes.  It

16   seems clear that LVMPD homicide detectives believed they lacked probable cause for an arrest

17   warrant and complaint for Anderson on their murder investigation.  However, it is undisputed

18   that there was probable cause for the complaint and arrest warrant on the assault with a deadly

19   weapon charge.  Thus, omitting the fact that LVMPD was interested in investigating Anderson

20   for a homicide was not a materially false or reckless omission.

21        Finally, there is no support at all in the record for the argument that Judge Allf served as

22   "rubber stamp" to detective Amundson by approving the application.  Anderson's request for a

23   *Franks* hearing is therefore denied.

24   **II.     Section 2703(d) and Historical Cell Site Location Information.**

25        The Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. 99-508 (1986)

26   addresses various areas of electronic surveillance including wiretaps, tracking devices, stored

27   wire and electronic communications, pen registers, and trap and trace devices.  *United States v.*

28   *Espudo*, 954 F. Supp. 2d 1029, 1032 (S.D. Cal. 2013).  Title II of the ECPA, the Stored

Communications Act ("SCA"), governs access to stored electronic communications.  The SCA is codified at 18 U.S.C. § 2703.  The SCA permits a government entity to "require a provider of electronic communication service, or remote computing service, to disclose a record or other information pertaining to a subscriber to or a customer of such service (not including the contents of communications) only when the government entity…obtains a court order for such disclosure."  18 U.S.C. § 2703(c)(1)(B).

Basic subscriber records include a customer's name and address; telephone call records, including the time and duration of calls; length of service including the start date for the account and types of service provided; and method of payment, including credit card or bank account numbers.  18 U.S.C. § 2703(c)(2).  Other subscriber information include transactional records, such as logs, recording, account usage, and email addresses of individuals with whom the customers corresponded, and historical cell site data, which discloses the physical location of the caller in the past.  18 U.S.C. § 2703(c)(1). Section 2703(d) allows a government entity to obtain subscriber information, including historical cell site location information, if the government entity "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).

Anderson argues that modern cell phone technology is such that historical cell site location information implicates a cell phone user's reasonable expectation of privacy under the Fourth Amendment.  He contends the government should be required to obtain a warrant based on probable cause, to obtain historical cell site location information even though the SCA authorizes a court order under a lesser standard.

The Ninth Circuit has not yet addressed whether the government may constitutionally obtain historical cell site location information for a cell phone under the SCA's "specific and articulable facts" standard.  There is a split among the circuit courts of appeal which have decided the issue.  The Fifth Circuit has held that in order to obtain historical cell site records of a particular cell phone, the government may apply to a court for an order under Section 2703(d) and that the court *must* grant the order if the statutory requirements for an order are met.

Specifically, if the application seeks an order to require a provider of electronic communication service or remote computing service to disclose non-content records or other information pertaining to a subscriber to or a customer of such service, and  meets the specific and articulable facts standard the statute directs that the court "shall issue" the order.  *In re: U.S. for Historical Cell Site Data*, 724 F.3d 600, 607 (5th Cir. 2013).  Although recognizing that technology is changing rapidly, the Fifth Circuit decided that an order under 2703(d) to obtain historical cell site information for specified cell phones did not violate the Fourth Amendment.  *Id.* at 615.  It held that the SCA's authorization of a Section 2703(d) order for historical cell site information based on a specific and articulable facts standard rather than a Fourth Amendment probable cause standard was not, per se, unconstitutional.  *Id.* at 616.

The Eleventh Circuit has also held that the court may issue a Section 2703(d) order for historical cell site location information based on the specific and articulable facts standard and that a warrant, based on probable cause, was not unconstitutionally required.  *United States v. Davis*, 785 F.3d 498 (2015).  *Davis* held that obtaining a Section 2703(d) order for historical cell site location information "did not constitute a search and did not violate the Fourth Amendment rights" of the defendant.  *Id.* at 513.

The Fourth Circuit has held that obtaining historical cell site location information based on a Section 2703(d) order supported by specific and articulable facts violated the Fourth Amendment.  *United States v. Graham*, 796 F.3d 332 (2015), *rehearing en banc granted*, 624 Fed App'x 75 (2015).  However, it denied the defendant's motion to suppress the records obtained based on the good faith exception to the warrant requirement. *Graham* held that, although the government violated the defendants' Fourth Amendment rights by procuring historical cell site location information without a warrant based on probable cause, the records should not be suppressed "because the government acted in good-faith reliance on court orders issued under the SCA." *Id.* at 361.  The decision outlined the purpose of the exclusionary rule and the heavy cost to our system of justice and society at large when courts are required to disregard reliable evidence and suppress the truth about criminal conduct.  *Id.*  The court reasoned that the sole purpose of the exclusionary rule is to deter future Fourth Amendment

violations.  *Id.*  Law enforcement officers obtaining Section 2703(d) orders acted in objective good faith reliance on the provisions of the SCA.  Therefore, the government was entitled to the good faith exception because, in seeking an application for historical cell site location information, the government relied on the procedures established in the SCA and two court orders issued by magistrate judges in accordance with the SCA.  *Id.* at 362.

Where, as here, the SCA specifically authorizes a government entity to obtain historical cell site location information based on an order under the "specific and articulable facts" standards, and no controlling authority has required a warrant based on probable cause, the court finds the good faith exception to the exclusionary rule applies.  Detective Amundson acted in objective good faith reliance on the provisions of the SCA. Suppression is therfore not warranted, and would not further the purpose of the exclusionary rule.  *See, Herring v. United States*, 129 S. Ct. 695, 698 (2009).

## III.    Adequacy of *Miranda* Warnings.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amendment V.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment affords a citizen the right to be informed prior to custodial interrogation that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning."  *Id*. at 479.  The Supreme Court presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically warned of his *Miranda* rights and freely decides to forgo those rights.  *New York v. Quarles*, 467 U.S. 649, 654 (1984).

The *Miranda* decision "established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation."  *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989).  *Miranda* warnings are prophylactic in nature and are "not themselves rights protected by the Constitution."  *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).  Instead, *Miranda* warnings are

"measures to ensure that the right against compulsory self-incrimination [is] protected." *Id*. For this reason, courts reviewing the adequacy of warnings, "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Eagan*, 492 U.S. at 203. Reviewing courts should determine whether the warnings that were administered reasonably conveyed to the suspect the rights *Miranda* requires. *California v. Prysock*, 453 U.S. 355, 361 (1981). No "talismanic incantation" is required to satisfy the warnings *Miranda* requires. *Id*. at 359. Rather, the language used in the *Miranda* decision or their "fully effective equivalent" are prerequisites to the admissibility of any statement made by a suspect in custody. *Id*. at 360.

A misleading *Miranda* warning is inadequate. *Prysock*, 453 U.S. at 359. The Ninth Circuit has held that *Miranda* warnings "must be read and conveyed to all persons clearly and in a manner that is unambiguous." *United States v. San Juan-Cruz*, 314 F.3d 384, 389 (9th Cir. 2002). However, "[t]o be found inadequate, an ambiguous warning must not readily permit an inference of the appropriate warning." *Doody v. Schriro*, 548 F.3d 847, 863 (9th Cir. 2008), *aff'd on remand by Doody v. Ryan*, 649 F.3d 986 (9th Cir. 2011) (en banc). A determination of the adequacy of *Miranda* warnings raises mixed questions of law and fact, which the Ninth Circuit reviews *de novo*. *Sechrist v. Ignacio*, 549 F.3d 789, 805 (9th Cir. 2008).

In *Duckworth v. Eagan*, 492 U.S. 195 (1989), the Supreme Court resolved a conflict among the lower courts concerning whether informing a suspect that an attorney would be appointed "if and when you go to court" rendered *Miranda* warnings inadequate. The Seventh Circuit found the "if and when you go to court" language suggested that only those accused who can afford an attorney have the right to have one present before answering questions and implied that if the accused does not go to court, that is, if the government does not file charges, the accused is not entitled to counsel at all. *Id*. at 199–201. The Supreme Court rejected this view, finding that the Court of Appeals "misapprehended the effect of the inclusion of" this language. *Id*. at 203. The Supreme Court held that the "if and when you go to court" language did not render *Miranda* warnings inadequate. It reasoned that the "if and when you go to court" language accurately described the procedure under Indiana law to appoint counsel at the defendant's initial appearance and simply anticipates a suspect's question of when he will obtain

counsel. *Id.* at 204.  Additionally, the Supreme Court reiterated that *Miranda* did not require that attorneys be "producible on call" or suggest that every police station must have a lawyer available at all times to advise suspects.  *Id.*

In *United States v. Miguel*, 952 F.2d 285 (9th Cir. 1991), the Ninth Circuit concluded that *Miranda* warnings were adequate when the officer told the suspect he "may" have an attorney appointed if he could not afford one.  *Id.* at 287–88.  A suspect must be informed of the right to have counsel present during questioning.  *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984); *see also United States v. San Juan-Cruz*, 314 F.3d 384, 388 (9th Cir. 2002) (*Miranda* warning must clearly convey to the arrested party that he possesses the right to have an attorney present prior to and during questioning).  In *United States v. Noa*, 443 F.2d 144 (9th Cir. 1971), the Ninth Circuit held that the *Miranda* warning was adequate even though it did not explicitly state that appointed counsel would be available prior to and during questioning.  In *People of the Territory of Guam v. Snaer*, 758 F.2d 1341 (9th Cir. 1985), the Ninth Circuit concluded that Guam's standard advisement of rights form was adequate even though it did not expressly state that the Defendant had the right to consult with a lawyer *before* questioning or *prior* questioning.

The *Snaer* decision recognized the importance that a defendant be adequately warned of his right to consult with an attorney before questioning.  *Id.* at 1343.  It also recognized that although *Miranda* requires a defendant to be advised of his right to consult with counsel before questioning, the case law is ambiguous concerning how explicitly the person must be warned of that right.  *Id.* 1342.  To comply with the Fifth Amendment, a *Miranda* warning does not have to be explicit as long as it adequately conveys notice of the right to consult with an attorney before questioning.  *Id.* at 1343.

In *United States v. Connell*, 869 F.2d 1349 (9th Cir. 1989), the Ninth Circuit held that *Miranda* warnings that failed to advise the defendant of his right to appointed counsel were inadequate where the officer advised the defendant that if he could not afford to pay for a lawyer, one *may* be appointed to represent him because of the confusion caused by two inconsistent warnings.  The Ninth Circuit cited with approval its prior holding in *United States v. Garcia*, 431 F.2d 134 (9th Cir. 1970), finding "a warning adequate, though there has been a failure to state

1   explicitly that appointed counsel is available prior to and during questioning, when the existence

2   of this right can easily be inferred from the warnings actually given." *Connell*, 869 F.2d at 1352.

3   The *Connell* Court stated that "otherwise unobjectionable *Miranda* warnings will not be found

4   inadequate simply because they fail explicitly to state that an individual's right to appointed

5   counsel encompasses the right to have that counsel present prior to and during questioning." *Id*.

6   at 1351.  *Miranda* is not satisfied where defendant is advised that he had the right to counsel, but

7   was not also advised that he had the right to consult with an attorney prior to questioning or to

8   have an attorney present during questioning.  *United States v. Toliver*, 480 F. Supp. 2d 1216 (D.

9   Nev. 2007), *aff'd*, 380 F. App'x 570 (9th Cir. 2010).

10          Two district judges and one magistrate judge in this district have concluded that the

11   standard LVMPD *Miranda* warnings are constitutionally inadequate.  District Judge Richard F.

12   Boulware recently held that a *Miranda* warning given to the defendant was deficient because it

13   did not advise the defendant of his right to consult with an attorney before questioning.  *See*

14   *United States v. Chavez*, Case No. 2:15-cr-00035-RFB-CWH, Order (Dkt. #55), 111 F. Supp. 3d

15   1131 (D. Nev. 2015).  In *Chavez*, Judge Boulware's decision noted that although the officer

16   testified she read the defendant *Miranda* warnings from a card, she did not testify as to what was

17   printed on the card and there was no other testimony in the record about the rights that were read

18   to the defendant.  111 F. Supp. 3d at 1138.  Additionally, District Judge Jennifer A. Dorsey

19   recently granted a motion to suppress statements in *United States v. Loucious*, Case No. 2:15-cr-

20   00106-JAD-CWH, Feb. 19, 2016 Order (Dkt. #75), holding that LVMPD's standard *Miranda*

21   warnings failed to adequately inform defendants of their right to consult with counsel before

22   questioning.  The United States has filed a notice of appeal, and Judge Dorsey's order is before

23   the Ninth Circuit.  Lastly, in *United States v. Carter*, Case No. 2:15-cr-00322-KJD-VCF,

24   Magistrate Judge Cam Ferenbach has also entered a Report and Recommendation (Dkt. #34)

25   finding the *Miranda* warnings given to the defendant were inadequate because they did not

26   explicitly state or adequately convey that the defendant had the right to talk to an attorney before

27   answering any questions and recommending suppression of the defendant's statements.

28

Conversely, District Judge James C. Mahan has found that *Miranda* warnings given to a defendant were constitutionally adequate when they advised him of the right to the presence of an attorney during questioning and that if the defendant could not afford an attorney one would be appointed to him before questioning. *See United States v. Waters*, Case No. 2:15-cr-00080-JCM-VCF, Order (Dkt. #46), 2016 WL 310738 (D. Nev. Jan. 26, 2016). Judge Mahan found that although the Ninth Circuit has emphasized the critical importance of the right to know that counsel may be present *during* questioning, it had upheld warnings that failed to explicitly inform defendants of the right to consult with appointed counsel *prior* to questioning. *Id*. (citing *Unites States v Noa*, 443 F 2d. 144, 146 (9th Cir. 1971)).

A transcript of the *Miranda* warnings that were administered to Anderson by detectives following his arrest was attached as Exhibit C to Anderson's motion to suppress. *Miranda* requires that a person subjected to custodial interrogation must receive four warnings prior to any questioning. These four warnings "are invariable," but the words used may be varied so long as "essential information is conveyed." *Florida v. Powell*, 559 U.S. 50, 60 (2010). First, *Miranda* requires advising a suspect that "he has the right to remain silent." 384 U.S. at 479. Here, Anderson was advised, "[y]ou have the right to remain silent." Second, *Miranda* requires a warning "that anything a suspect says can be used against him in a court of law." *Id.* Anderson was advised, "[a]nything you say can be used against you in a court of law." Third, *Miranda* requires that a suspect be warned "he has the right to the presence of an attorney." *Id.* Anderson was advised, "[y]ou have the right to the presence of an attorney during questioning." Fourth, *Miranda* requires that a suspect be warned that "if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Id.* Anderson was advised, "[i]f you cannot afford an attorney, one will be appointed before questioning." Anderson was then asked, "[d]o you understand these rights?" Anderson responded, "yeah."

The Court finds that the *Miranda* warnings Anderson received complied with the four warnings *Miranda* mandates. Anderson argues that advising him of the right to the *presence* of an attorney during questioning does not adequately convey his right to consult with an attorney before and during questioning. However, the *Miranda* decision itself articulates the warning that

1   must be given as "the right to the *presence* of an attorney, and that if he cannot afford and

2   attorney, one will be appointed for him prior to any questioning."  384 U.S. at 479.

3          In *Snaer*, the decision relied upon by both judges Boulware and Dorsey, the Ninth Circuit

4   found a *Miranda* warning adequate which failed to advise the defendant that he had the right to

5   consult with a lawyer before questioning or prior to questioning.  758 F.2d at 1342.  The warning

6   that was upheld in *Snaer* stated, "[y]ou have the right to consult with a lawyer and to have a

7   lawyer present with you while you are being questioned."  *Id.* at 1343.  The Ninth Circuit held

8   that "the first part of that sentence read in the context of the latter half of the sentence does

9   adequately convey notice of the right to consult with an attorney before questioning" even

10  though it did not explicitly inform him of that right.  *Id.*

11         The Court finds that the *Miranda* warnings Anderson received were more explicit than

12  the one found sufficient in *Snaer*.  It seems clear that a reasonable person would infer that he had

13  the right to speak with a lawyer before questioning from the warnings Anderson received.

14  Anderson was told he had the right to the presence of an attorney.  A reasonable person would

15  understand that the right to the presence of an attorney would include the right to consult with an

16  attorney prior to questioning.  Moreover, the *Miranda* warnings Anderson received are virtually

17  identical to the four warnings the Supreme Court mandated in *Miranda*.  LVMPD's standard

18  *Miranda* warning recites the four warnings mandated by *Miranda* almost verbatim with the

19  exception of the final three words "if he so desires".  The warnings Anderson received

20  adequately conveyed what *Miranda* requires.

21         For the reasons explained,

22         **IT IS RECOMMENDED** that Anderson's Motion to Suppress be DENIED.

23         DATED this 27th day of April, 2016.

24

25                                          _____
                                           PEGGY A. LEEN
26                                         UNITED STATES MAGISTRATE JUDGE

27

28